UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAURA R.,

                               **Plaintiff,**

vs.                                                      5:21-CV-00320
                                                              (MAD)

**COMMISSIONER OF SOCIAL SECURITY,**

                                **Defendant.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**OLINSKY LAW GROUP**                      **HOWARD D. OLINSKY, ESQ.**
250 South Clinton Street
Suite 210
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **LOUIS JOHN GEORGE, ESQ.**
JFK Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

       On April 4, 2019, Plaintiff Laura R. filed an application for Social Security Disability Insurance Benefits ("DIB"). *See* Dkt. No. 9, Administrative Transcript ("Tr.") at 192-95. Plaintiff's claim was denied on June 26, 2019, *see id.* at 121-28, and again upon reconsideration on November 4, 2019, *see id.* at 130-37. Plaintiff made a timely request for a hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on August 31, 2020. *See id.* at 13-25. Plaintiff made a request to review the decision, and on January 25, 2021, the Appeals Council denied Plaintiff's request. *See id.* at 1-5.

On March 22, 2021, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) to review the Commissioner's unfavorable decision. *See* Dkt. No. 1. Plaintiff has submitted a brief arguing that the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence. *See* Dkt. No. 14. Defendant argues to the contrary. *See* Dkt. No. 17. For the reasons that follow, the Commissioner's decision denying Plaintiff benefits is affirmed.

## II. BACKGROUND

Plaintiff was thirty-five years old at the time of her hearing and had completed a Bachelor's of Science. *See* Tr. at 37. Plaintiff had previously worked for thirty hours a week in the deli department of a BJ's Wholesale Club and as a data entry clerk at a company named Hazard and Siegel. *See id.* at 38-39. Plaintiff testified that she "kept needing to call in to work or show[ ] up late" to her position at Hazard and Siegel and was ultimately asked to resign from her position. *Id.* at 40. Plaintiff believes that she can no longer work because she is "at a point where [she is] not regularly awake enough to be able to get to work regularly" due to fatigue. *Id.* Plaintiff has a two-year-old child that she cares for with the help of her husband. *See id.* at 40-41. Plaintiff testified that she "regularly" lifts things in the twenty-pound range—primarily her child—and could walk "one to two miles depending on terrain." *Id.* at 42.

When questioned by her counsel, Plaintiff testified that her sleep and fatigue issues had grown worse "over the past 15 years," to the point where she has episodes that last "three to five days" and occur "about once a week" where she is "barely getting out of bed[,] can barely do anything," and suffers from "brain fog" and "migraines." *Id.* at 48-49. Plaintiff explained that the brain fog causes "[t]rouble thinking clearly or ... focusing or working through thoughts" and that her migraines are "very" painful. *Id.* at 49-50. Plaintiff also explained that she has symptoms of fibromyalgia that cause "a lot of pain" in her neck, shoulder, and hip areas. *See id.* at 52.

Plaintiff additionally suffers from back pain that causes shooting pain and numbness in her legs. *See id.* at 53. Plaintiff stated that she was okay sitting "[f]or the most part." *Id.* at 54. Plaintiff testified that she has "well-controlled" depression as well as attention deficit disorder that causes her concentration issues. *Id.* at 57. Plaintiff stated that she could shower but was generally too tired to do it, and that her husband "does all the work around the house," with her mother's help. *Id.* at 55.

In a decision dated August 31, 2020, the ALJ determined that Plaintiff was not disabled under the Social Security Act. *See id.* at 13-25. In her decision, the ALJ found the following: (1) Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 30, 2018; (2) Plaintiff's severe impairments included fibromyalgia, degenerative disc disease, asthma, chronic fatigue syndrome, migraine headaches, and obesity; (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments; (4) Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b); and (5) Plaintiff was capable of performing past relevant work as a data entry clerk as it did not require the performance of work-related activities precluded by Plaintiff's RFC. *See id.* at 15-24.

### III. DISCUSSION

**A.    Standard of Review**

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)). "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step." *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under Title 42, United States Code Section 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

B.  **The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2018, the alleged onset date. *See* Tr. at 15. At step two, the ALJ concluded that Plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease, asthma, chronic fatigue syndrome, migraine headaches, and obesity. *See id.* at 15, 17. The ALJ found that Plaintiff's medically determinable mental impairments of depressive disorder and attention-deficit disorder, considered singly and in combination, were non-severe because they did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities. *See id.* at 15. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 17-19.

At step four, the ALJ found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] should not work at unprotected heights, climb ladders, ropes, or scaffolds, or work in close proximity to dangerous machinery or moving mechanical parts of equipment; [Plaintiff] should have no more than occasional concentrated exposure to respiratory irritants, such as dust, odors, fumes, gases, extreme hot and cold temperatures, and humidity; [Plaintiff] can tolerate no more than moderate levels of noise ... ; should avoid work outdoors in bright sunshine and work with bright or flickering lights, such as one would experience welding or cutting metals.

*Id.* at 19. Initially, the ALJ examined the medical record and Plaintiff's testimony, and concluded that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, ... [her] statements concerning the intensity, persistence and limiting

effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 20. The ALJ then considered a number of medical opinions. First, the ALJ considered the medical opinions and prior administrative medical findings of six state agency consultants[1] and found those opinions to be persuasive. *See id.* at 22. Second, the ALJ considered the opinions of three consultative examiners[2] and found that their medical opinions were either persuasive or partially persuasive. *See id.* at 23. Third, the ALJ considered the medical opinion of Avni Patel, M.D., who opined that Plaintiff would be absent from work more than four days per month; would need unscheduled rest breaks five times a week; could sit, stand, and walk for six hours; and could frequently lift up to twenty pounds. *See id.* at 22. The ALJ found her opinion to be unpersuasive, explaining that although the opinion was "supported by an explanation, the opined limitations [were] inconsistent with treatment notes and overall evidence." *Id.* The ALJ then particularized those portions of the record which she had determined were inconsistent with the limitations identified by Dr. Patel. *See id.* at 22-23.

Finally, at step four, the ALJ found that Plaintiff was capable of performing past relevant work as a data entry clerk, as that work did not require the performance of work-related activities precluded by Plaintiff's RFC. *See id.* at 24. Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act, during the relevant time period. *See id.*

**C.     Analysis**

Plaintiff ascribes two errors to the ALJ's RFC analysis. First, Plaintiff claims that the ALJ failed to properly evaluate Dr. Patel's medical opinion. *See* Dkt. No. 14 at 16. Second, Plaintiff

---

[1] Specifically, M. Marks, Ph.D.; S. Hennessey, Ph.D.; and T. Bruni, Ph.D.; T. Schmidt-Deyoung, M.D.; S. Putcha, M.D.; and S. Siddiqui.

[2] Specifically, Jeanne A. Shapiro, Ph.D.; Kalyani Ganesh, M.D; and Richard Weiskopf, M.D.

argues that the ALJ failed to properly evaluate her subjective complaints about her symptoms. *See id.* at 16, 18.  In opposition, Defendant argues that the ALJ properly evaluated both the opinion of Dr. Patel and Plaintiff's subjective complaints.  *See* Dkt. No. 17.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC determination is informed by consideration of a claimant's physical and mental abilities, symptomology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis.  *See id.*; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

When addressing a plaintiff's RFC, an ALJ is required to note how "the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)."  SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998).  Additionally,

> [t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545, 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184, at *1; *see also Pronti v. Barnhart*, 339 F. Supp. 2d 480, 490 (W.D.N.Y. 2004).  An ALJ's failure to explain the evidence he or she relied upon in assessing RFC constitutes a ground for a remand.  *See Compo v. Commissioner of Soc. Sec.*, No. 6:05-CV-973, 2009 WL 2226496, *9 (N.D.N.Y. July 23, 2009) (citation omitted); *see also Hodge v. Astrue*, No. 07-CV-0162, 2009 WL 1940051, *10 (N.D.N.Y. July 7, 2009) (citation omitted).

To properly ascertain a claimant's RFC, an ALJ must assess the claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull.  *See* 20

C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a. Nonexertional limitations or impairments, including impairments resulting in postural and manipulative limitations, must also be considered. *See* 20 C.F.R. §§ 404.1545(b), 404.1569(a); *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions the claimant is capable of performing; conclusory statements concerning his or her capabilities will not suffice. *See Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1998)). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the corresponding regulations. *See Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

   *1. Evaluation of Medical Opinion Evidence*

"ALJs must consider medical opinion evidence of record." *Telesco v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 336, 343 (S.D.N.Y. 2021), *report and recommendation adopted*, 2022 WL 719271 (S.D.N.Y. Mar. 10, 2022). For claims filed on or after March 27, 2017, the ALJ must apply 20 C.F.R. § 404.1520c rather than 20 C.F.R. § 404.1527. Under 20 C.F.R. § 404.1520c, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." Instead, the ALJ will evaluate the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *See* 20 C.F.R. § 404.1520c(c)(1)-(5). Of those factors, the "factors of supportability ... and consistency ... are the most important factors" when determining how persuasive a medical source's medical opinions or

prior administrative medical findings are. *Id.* § 404.1520c(b)(2).

The ALJ is required to "'explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the ALJ's] determination or decision.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, *1 (2d Cir. June 17, 2022) (quoting 20 C.F.R. § 416.920c(b)(2)). The failure to do so "is grounds for remand." *Telesco*, 577 F. Supp. 3d at 344 (citations omitted). However, despite the failure of an ALJ to do so, a court may still affirm "if 'a searching review of the record' assures [the court] 'that the substance of the [regulation] was not traversed.'" *Loucks,* 2022 WL 2189293, at *2 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).

The ALJ has thoroughly explained her "consistency" findings with respect to the medical opinion of Dr. Patel. Specifically, the ALJ clearly set forth the portions of the record that were inconsistent with Dr. Patel's opined limitations:

> Here, diagnostic imaging, of the claimant's lumbar spine, did not reveal any nerve root or cord compromise (5F/5). Some improvement with physical therapy was reported (19F/31). On exam, the claimant had a normal gait (3F/7, 19, 5F/2, 8F/2, 10F/3, 20F/3). She was able to walk on her heels and toes without difficulty (5F/2, 12F/3). Straight leg raise testing was negative bilaterally (5F/3, 12F/3). No sensory deficits were noted (5F/3). She also had normal musculoskeletal strength (5F/3, 12F/4, 16F/11). Additionally, a provider noted that her asthma was well-controlled (8F/8). In regards to difficulty with computers, the claimant is only taking ibuprofen for her headaches, despite taking prescription medication in the past (1E/12, 5F/1). Moreover, there were no emergent treatment visits or ongoing complaints related to this condition. As such, the limitations, such as absenteeism and time off task, are inconsistent with the overall evidence.

Tr. at 22-23. Plaintiff alleges that this analysis was "selective" and "flawed" because it contained "no meaningful discussion of Plaintiff's functional limitations stemming from her migraine headaches." Dkt. No. 14 at 16. This Court disagrees. In addition to specifically raising Plaintiff's

switch to ibuprofen from prescription medicine when discussing Dr. Patel's medical opinion, *see* Tr. at 23, the ALJ had just previously noted Plaintiff's diagnosis of "migraine headaches" and Plaintiff's claim that "a lack of sleep triggers her migraines" and determined that

> [t]he evidence supports that the claimant can tolerate no more than moderate levels of noise, should avoid work outdoors in bright sunshine, and work with bright or flickering lights. However, no additional limitations are supported. Although prescribed medication in the past, the claimant reported that she takes ibuprofen for headaches (1E/12, 5F/1). Moreover, there were no emergent treatment visits or ongoing complaints related to this condition. Given the lack of ongoing complaints or exacerbations, the evidence does not support any additional limitations.

*Id.* at 21. To the extent that there may be evidence in the record that provides support for Dr. Patel's medical opinion, it is not the Court's function to reweigh the evidence on appeal, only to "decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 Fed. Appx. 58, 59 (2d Cir. 2013).

However, even assuming the ALJ made an error when she considered Dr. Patel's medical opinion, a "'searching review of the record'" assures the Court "'that the substance of the [regulation] was not traversed.'" *Loucks*, 2022 WL 2189293, at *1 (quoting *Estrella*, 925 F.3d at 96). First, with specific reference to Dr. Patel's medical opinion, (1) Dr. Patel's treatment records did not include any information about the frequency, severity, or symptoms of Plaintiff's migraine headaches, *see id.* at 463-70, 516-23, and Dr. Patel once even indicated "no headaches," *see id.* at 522; (2) Dr. Patel's opinion that Plaintiff has "[d]ifficulty with bright lights[ ] [and] computers," *id.* at 429, is undermined by records, medical and otherwise, that indicated that her activities included watching television, playing on her phone, and using a computer for shopping, *see id.* at 228, 231, 314, 437, 448, 490, 494; and (3) Dr. Patel's opinion that Plaintiff experienced five headaches per month, *see id.* at 427, 534, is undermined by her hearing testimony that she is "not

really getting the migraines because [she is] not ... pushing [her]self at all," *id.* at 51. Second, and more generally, there is substantial evidence in the record indicating that Plaintiff did not regularly complain of suffering from chronic headaches. *See id.* at 409, 413, 417, 421, 484, 506, 525, 585, 593. To the extent that Plaintiff objects to the ALJ's rejection of Dr. Patel's assessment of the limiting effects of Plaintiff's fatigue symptoms, the record evidence of Plaintiff's activities provided substantial support for the conclusion that Plaintiff was not as limited by her fatigue as Dr. Patel found. *See id.* at 229-32, 313, 447-48, 490.

Accordingly, the Court does not find any reversible error in the ALJ's evaluation of Dr. Patel's medical opinion.

### *2. Evaluation of Plaintiff's Subjective Complaints*

"It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Chicocki v. Astrue*, 534 Fed. Appx. 71, 75 (2d Cir. 2013) (quotation omitted). An ALJ must evaluate the intensity and persistence of a claimant's symptoms and any functional limitations attendant to them in order to determine how they affect a claimant's capacity for work. *See* 20 C.F.R. § 404.1529(c)(1). Since symptoms such as pain sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the ALJ must carefully consider any other information submitted by the claimant for its consistency with any and all relevant evidence. *See id.* § 404.1529(c)(3). A claimant's statement(s) about the intensity and persistence of a particular symptom, such as pain, or about the limiting effects the symptoms have on his or her ability to work will not be rejected solely because the available objective medical evidence does not substantiate a claimant's statement(s). *See id.* § 404.1529(c)(2). "However, the ALJ is not obliged to accept without question the

credibility of such subjective evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (citations omitted). "When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight." *Crysler v. Astrue*, 563 F. Supp. 2d 418, 439-40 (N.D.N.Y. 2008) (citations omitted).

"However, if a claimant's statements about his or her symptoms are not substantiated by the objective medical evidence, the ALJ must consider the other evidence and make a finding on the credibility of the individual's statements." *Chicocki*, 534 Fed. Appx. at 76 (citation omitted). In doing so, the ALJ should consider:

> (1) [the claimant's] daily activities;
>
> (2) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (3) Precipitating and aggravating factors;
>
> (4) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;
>
> (5) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;
>
> (6) Any measures [the claimant] use[s] or ha[s] used to relieve pain or other symptoms ...; and
>
> (7) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

*Id.* (citing 20 C.F.R. § 416.929(c)(3)). In doing so, the ALJ will "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4). The claimant's symptoms will "be determined to diminish [their] capacity for basic work activities ... to the

extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* § 404.1529(c)(4).

The ALJ must provide "'specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.'" *Cichocki*, 534 Fed. Appx. at 76 (quotation omitted).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Id.* (quotation omitted).

The ALJ properly determined that Plaintiff's symptoms were not substantiated by the objective medical evidence and adequately considered all the relevant factors when determining that Plaintiff's statements were not credible.  Here, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. at 20.  The ALJ then proceeded to thoroughly examine (1) Plaintiff's daily activities, *see id.* at 21 ("In regards to her activities, ... "); (2) the location, duration, frequency, and intensity of Plaintiff's symptoms, *see id.* at 20-22 (examining the details of Plaintiff's reports of pain, fatigue and aching, migraine headaches, and asthma); (3) the relevant precipitating and aggravating factors, *see id.* at 21 (discussing the evidence of obesity); (4) the type, dosage, effectiveness, and side effects of Plaintiff's medication taken to alleviate Plaintiff's symptoms, *see id.* (discussing the medication taken for Plaintiff's headaches); and (5) the other treatments Plaintiff has received for her symptoms, *see id.* (discussing improvements to Plaintiff's condition due to conservative arthritis management and physical therapy).  In any event, as with

Dr. Patel's opinion above, to the extent the ALJ may have erred or not explicitly referenced a particular factor in making this finding, the evidence in the record substantiates the ALJ's determination. *See id.* at 229-32, 313, 409, 413, 417, 421, 447-48, 484, 490, 506, 525, 585, 593.

Accordingly, the Court does not find any reversible error in the ALJ's evaluation of Plaintiff's subjective complaints.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying Plaintiff benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 12, 2022
　　　　Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge